UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM WATERS, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Jury Trial Demanded |
| FEDEX FREIGHT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff WILLIAM WATERS by and through his attorneys, O'Connor | O'Connor, P.C., and brings the following Complaint against Defendant FedEx FREIGHT, and in support thereof states as follows:

## NATURE OF ACTION

1. Plaintiff William Waters ("Waters") brings this action to redress violations of the Americans with Disabilities Act, the Family and Medical Leave Act, the Illinois Workers' Compensation Act, and the Illinois Human Rights Act by Defendant FedEx Freight ("FedEx").

2. Specifically, Plaintiff seeks awards of back pay and benefits, future losses of wages and benefits, compensatory damages, punitive damages, liquidated damages, attorney's fees, costs, other monetary damages, other equitable and injunctive relief, and all other relief available under these laws.

## JURISDICTION AND VENUE

3. Counts I and II are brought pursuant to the Americans with Disabilities Act and the Family and Medical Leave Act, respectively. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

4. Counts III and IV are brought pursuant to the Illinois Workers' Compensation Act and the Illinois Human Rights Act, respectively. The Court has supplemental jurisdiction over Plaintiff's Illinois state law claims pursuant to 28 U.S.C. § 1367.

5. Waters has exhausted all of his administrative remedies. He received his right to sue letter from the EEOC on May 11, 2016.

6. Venue is proper under 28 U.S.C. 1391(b) because the events giving rise to the claims alleged herein occurred within the Northern District of Illinois.

## GENERAL FACTUAL ALLEGATIONS

7. Waters began his employment with FedEx on November 22, 2010. During the relevant time period, Waters worked as a truck driver.

8. On August 31, 2014, Waters suffered a workplace injury when a hand crank struck him in the ribs.

9. Waters notified FedEx of the injury on September 2, 2014, and that he had a doctor's appointment set for the following day.

10. Waters went to the doctor on September 3, 2014 and was diagnosed with costochondritis which produces severe chest pain. The doctor said that Waters could not return to work immediately and needed some time to recover.

11. Later that same day, he returned to FedEx to fill out injury related work forms and to request workers' compensation and medical leave. Waters noticed that the workers'

compensation forms were missing from the litany of FedEx medical forms he completed. However, Waters notified his head supervisor, Robert Vande Hei, of the injury.

12. Waters did manage to eventually file for workers' compensation.

13. On September 8, 2014, Vande Hei told Waters that he should not file for workers' compensation because he had a "slim chance" of actually receiving it. Vande Hei told Waters to file for short term disability as a "backup."

14. Waters filed for short term disability per Vande Hei's suggestion and recommendation. Waters called Cigna, his health insurer through FedEx, and answered a series of questions via telephone to apply for short term disability.

15. Also on September 9, 2014, Waters received a letter from FedEx stating that this injury was a qualifying event under the Family and Medical Leave Act (FMLA) leave.

16. Waters later received a copy of the telephonic interview from Cigna, and discovered that all the answers that Waters gave during the interview were changed and inaccurate.

17. On or about September 10, 2014, FedEx placed Waters on a leave of absence or inactive status.

18. On September 17, 2014, Waters was informed that his workers' compensation claim was denied because he filed for short term disability contemporaneously.

19. Waters later came to learn from talking with numerous Cigna employees handling his claim that he could not apply for both Workers' Compensation and Short Term Disability on the contrary to Vande Hei's assurances.

20. On September 23, 2014, Waters withdrew his Short Term Disability application with Cigna.

21. On September 25, 2014, Waters received a letter from FedEx stating that he had returned to work. Waters was confused by this because he was still injured, and had not been released by his doctors to return to work yet.

22. On October 1, 2014, Waters was notified that his workers' compensation claim is not "compensable."

23. On October 3, 2014, Waters' leave status was changed to "unauthorized leave of absence," and FedEx terminated Waters' health benefits.

24. October 7, 2014, Waters received clearance from a doctor to return to FedEx on light duty.

25. Waters called one of his supervisors, Michael Trotter, to notify him of the light duty release.

26. Trotter called Waters back later and informed him that he could not return to work on light duty, and could come back to work only when he was "100 percent" healthy.

27. On October 13, 2014, Waters learned of the health insurance termination when his wife was notified that her family no longer had insurance coverage while she was at the pediatrician's office with her and Waters' three children.

28. October 23, 2014, during a visit to a different doctor Waters learned that he had a broken rib that went undiagnosed from the date of his injury until this date.

29. The next day, Waters informed Roger Maco of the rib injury, and Maco told Waters that he had to file for Short Term Disability.

30. On November 6, 2014, Maco called Waters to inform him that if he did not file for Short Term Disability he would be terminated.

31. Maco called and left a voicemail the next day restating that Waters must file for Short Term Disability and that he needed to call him by the end of business that day.

32. On November 20, 2014, Waters received an undated letter from Vande Hei stating Waters had been on an unauthorized leave of absence since September 4, 2014 and to call him or Michael Trotter within 48 hours.

33. Waters responded the next day by disputing the claims in Vande Hei's letter and for them to speak with the attorney representing Waters in his workers' compensation claim.

34. On December 1, 2014, Waters received a letter from Phil Resendiz, the managing Director of his FedEx location and others in the region, thanking him for his fine workmanship and loyalty to the company.

35. Waters filed a charge of discrimination with the Equal Employment Opportunity Commission on January 12, 2015.

36. FedEx still continues to harass Waters with letters over an "unprotected leave of absence."

37. Thomas Durnell sent such a letter to Waters on May 27, 2016 demanding that Waters contact him within 48 hours to discuss his employment status or FedEx would proceed with his separation from the company.

38. Waters did not see this letter until July 17, 2016 because he did not live at the address that the letter was sent to.

39. As of the date of this filing, Waters' employment status with FedEx is still unclear, but to the best of Plaintiff's knowledge he has not been officially terminated by FedEx.

COUNT I
AMERICANS WITH DISABILITIES ACT
FAILURE TO ACCOMMODATE, DISABILITY DISCRIMINATION,
REGARDED AS DISABLED DISCRIMINATION

40. Paragraphs 1 through 39 are hereby restated and re-alleged as if fully set forth in Count I.

41. At all relevant times, Plaintiff was disabled within the meaning of the ADA because he suffered from costochondritis, as well as complications from a prolonged, undiagnosed broken rib. These conditions substantially limited one or more major life activities for Plaintiff.

42. At all relevant times, Plaintiff was and is capable of performing all of the essential functions of his job position with or without a reasonable accommodation.

43. Defendants were aware of Plaintiff's disability because Plaintiff notified them of the injury and diagnosis. Additionally, Defendant approved his request for FMLA leave and multiple agents of Defendant pressured Plaintiff to file a claim for short term disability due to his injury

44. Plaintiff requested light duty work on or about October 7, 2014.

45. Defendant responded by telling Plaintiff he could not return to work until he was "100 percent" healthy. Defendants have not allowed Plaintiff to return to work as of the date of this filing.

46. Defendant did not communicate with Plaintiff regarding providing any potential reasonable accommodations. Defendant failed and refused to engage in the interactive process with Plaintiff or to provide him with a reasonable accommodation. Rather, they summarily barred him from returning to work.

47. Defendant's actions discriminated against Plaintiff due to disability by, *inter alia*: terminating his health insurance benefits and barring him from returning to work despite having a light duty release from his doctor.

48. In addition to failing to accommodate Plaintiff, Defendant regarded Plaintiff as being disabled because of his injury sustained on August 31, 2014 by barring him from returning to work unless he was "100 percent."

49. Defendant's actions were motivate by Plaintiff's disability, Defendant's perception of Plaintiff as disabled, and Plaintiff's requests for reasonable accommodation.

50. By conduct including, but not limited to that described above, Defendants failed to accommodate Plaintiff, and discriminated against him in violation of his rights under the ADA.

51. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered and continues to suffer substantial losses in wages and benefits, other past and future pecuniary losses, great emotional distress, mental anguish, humiliation, and embarrassment.

**WHEREFORE**, Plaintiff William Waters, seeks the following relief:

a. Declaration that Defendant has violated Plaintiff's rights under the ADA, as amended;

b. An award of all salary, wages, and benefits including, but not limited to: back pay, front pay, past and future pecuniary losses, and prejudgment interest;

c. An award of compensatory and punitive damages in an amount to be determined at trial;

d. An award of the costs of this action and reasonable attorney's fees;

e. An order requiring Defendants to remove any and all negative and/or adverse information from Plaintiff's personnel file and employment records and to correct or withdraw any such information that previously had been communicated or disseminated to any other party;

f. A permanent injunction preventing Defendants from further violations of Plaintiff's statutory rights;

g. All other damages and relief, legal or equitable, authorized under the ADA; and

h. Such other and further relief as this Court may deem just and equitable.

## COUNT II
## FAMILY AND MEDICAL LEAVE ACT
## INTERFERENCE AND RETALIATION

52. Paragraphs 1 through 51 are hereby restated and re-alleged as if fully set forth in Count II.

53. Plaintiff was approved for FMLA leave due to his injury on September 8, 2014.

54. Plaintiff's FMLA leave and continuation of health benefits was cut short and denied on and after October 3, 2014.

55. Plaintiff was given leave to return on light duty from his doctor on October 7, 2014.

56. Defendant refused at the time of the light duty release, and continues to refuse as of the date of this filing, to return Plaintiff to his previous position or an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

57. Additionally, Defendants retaliated against Plaintiff by treating him less favorably even though he was performing his job in a satisfactory manner.

58. This less favorable treatment includes but is not limited to: terminating his health insurance benefits and barring him from returning to work.

59. By conduct including but not limited to that described above, Defendant interfered with Plaintiff's rights under the FMLA and retaliated against him because of his use of the FMLA.

60. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered and continues to suffer substantial losses in wages and benefits, other past and future

pecuniary losses, great emotional distress, mental anguish, humiliation, and embarrassment.

**WHEREFORE**, Plaintiff William Waters, seeks the following relief:

a. Declaration that Defendant has violated Plaintiff's rights under the FMLA;

b. An award of all salary, wages, and benefits including, but not limited to: back pay, front pay, past and future pecuniary losses, and prejudgment interest;

c. An award of liquidated damages as provided for by the Act;

d. An award of the costs of this action and reasonable attorney's fees;

e. An order requiring Defendants to remove any and all negative and/or adverse information from Plaintiff's personnel file and employment records and to correct or withdraw any such information that previously had been communicated or disseminated to any other party;

f. A permanent injunction preventing Defendants from further violations of Plaintiff's statutory rights;

g. All other damages and relief, legal or equitable, authorized under the FMLA; and

h. Such other and further relief as this Court may deem just and equitable.

### COUNT III
### ILLINOIS WORKERS' COMPENSATION ACT
### RETALIATION AND INTERFERENCE

61. Paragraphs 1 through 60 are hereby restated and re-alleged as if fully set forth in Count III.

62. Plaintiff suffered an injury at work on August 31, 2014.

63. On or about September 3, 2014, Plaintiff returned to Defendant's location to fill out paperwork related to his worker compensation claim.

64. Plaintiff also discussed his workers' compensation claim with Robert Vande Hei, his manager, and Roger Maco, Defendant's HR representative.

65. Plaintiff was told by Vande Hei and Maco to not file a workers' compensation claim.

66. After maintaining his workers' compensation claim, Defendant refused to allow Plaintiff to return to a light duty position or any position at all.

67. As of the date of this filing, Defendant still refuses to allow Plaintiff to return to the position he held at the time of his injury.

68. Defendant's actions are causally related to Plaintiff's injury at work and filing of a workers' compensation claim.

69. Defendant's actions also interfered with Plaintiff's rights under the IWCA, including (but not limited to) his right to report, file, and maintain a workers' compensation claim.

70. Defendant took these actions in retaliation for Plaintiff exercising the rights afforded to him by the IWCA.

71. Defendant and its managers knew, and/or should have known, that their actions against Plaintiff were in violation of his rights under the Act and the strong public policy of the State of Illinois. Nonetheless, Defendant and its managers willfully and wantonly disregarded Plaintiff's rights and the public policy of Illinois and retaliated against Plaintiff after he filed for workers' compensation.

**WHEREFORE**, Plaintiff William Waters, seeks the following relief:

a. Declaration that Defendant has violated Plaintiff's rights under the IWCA;

b. An award of all salary, wages, and benefits including, but not limited to: back pay, front pay, past and future pecuniary losses, and prejudgment interest;

c. An award of compensatory and punitive damages in an amount to be determined at trial;

d. An award of the costs of this action and reasonable attorney's fees;

e. An order requiring Defendants to remove any and all negative and/or adverse information from Plaintiff's personnel file and employment records and to correct or withdraw any such information that previously had been communicated or disseminated to any other party;

f. A permanent injunction preventing Defendants from further violations of Plaintiff's constitutional and statutory rights;

g. All other damages and relief, legal or equitable, authorized under the IWCA; and

h. Such other and further relief as this Court may deem just and equitable.

## COUNT IV
## ILLINOIS HUMAN RIGHTS ACT
## FAILURE TO ACCOMMODATE, DISABILITY DISCRIMINATION, REGARDED AS DISABLED DISCRIMINATION

72. Paragraphs 1 through 51 are hereby restated and re-alleged as if fully set forth in Count IV.

73. At all relevant times, Plaintiff was disabled within the meaning of the IHRA because he suffered from costochondritis, as well as complications from a prolonged, undiagnosed broken rib. These conditions substantially limited one or more major life activities for Plaintiff.

74. At all relevant times, Plaintiff was and is capable of performing all of the essential functions of his job position with or without a reasonable accommodation.

75. Defendants were aware of Plaintiff's disability because Plaintiff notified them of the injury and diagnosis. Additionally, Defendant approved his request for FMLA leave and multiple agents of Defendant pressured Plaintiff to file a claim for short term disability due to his injury

76. Plaintiff requested light duty work on or about October 7, 2014.

77. Defendant responded by telling Plaintiff he could not return to work until he was "100 percent" healthy. Defendants have not allowed Plaintiff to return to work as of the date of this filing.

78. Defendant did not communicate with Plaintiff regarding providing any potential reasonable accommodations. Defendant failed and refused to engage in the interactive process with Plaintiff or to provide him with a reasonable accommodation. Rather, they summarily barred him from returning to work.

79. Defendant's actions discriminated against Plaintiff due to disability including but not limited to: terminating his health insurance benefits and barring him from returning to work despite having a light duty release from his doctor.

80. In addition to failing to accommodate Plaintiff, Defendant regarded Plaintiff as being disabled because of his injury sustained on August 31, 2014 by barring him from returning to work unless he was "100 percent."

81. Defendant's adverse employment actions as described above were motivated by Plaintiff's disability, Defendant's perception of Plaintiff as disabled, and Plaintiff's requests for reasonable accommodation.

82. By conduct including, but not limited to that described above, Defendants failed to accommodate Plaintiff, and discriminated against him in violation of his rights under the IHRA.

83. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered and continues to suffer substantial losses in wages and benefits, other past and future pecuniary losses, great emotional distress, mental anguish, humiliation, and embarrassment.

**WHEREFORE**, Plaintiff William Waters, seeks the following relief:

a. Declaration that Defendant has violated Plaintiff's rights under the IHRA;

b. An award of all salary, wages, and benefits including, but not limited to: back pay, front pay, past and future pecuniary losses, and prejudgment interest;

c. An award of compensatory damages in an amount to be determined at trial;

d. An award of the costs of this action and reasonable attorney's fees;

e. An order requiring Defendants to remove any and all negative and/or adverse information from Plaintiff's personnel file and employment records and to correct or withdraw any such information that previously had been communicated or disseminated to any other party;

f. A permanent injunction preventing Defendants from further violations of Plaintiff's constitutional and statutory rights;

g. All other damages and relief, legal or equitable, authorized under the IHRA; and

h. Such other and further relief as this Court may deem just and equitable.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully Submitted,
William Waters

By: *[signature]*
Kevin F. O'Connor

Dated: August 8, 2016

Kevin F. O'Connor (ARDC # 6300449)
Heewon O'Connor (ARDC # 6306663)
Ryan O. Estes (ARDC # 6312755)
O'Connor | O'Connor, P.C.
110 E. Schiller St., Ste. 312
Elmhurst, IL 60126
Tel.  630-903-6397
Fax. 630-658-0336
kevin@oconnor-oconnor.com
heewon@oconnor-oconnor.com
ryan@oconnor-oconnor.com